Slip Op. 12- 21

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **STANDARD FURNITURE MANUFACTURING CO., INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendants,<br><br>and<br><br>**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**<br><br>Defendant-Intervenors. | Before: **Gregory W. Carman, Judge**<br>**Timothy C. Stanceu, Judge**<br>**Leo M. Gordon, Judge**<br><br>**Consol. Court No. 07-00028** |

### OPINION

[Dismissing the consolidated case, in which certain claims must be dismissed for lack of standing and the remaining claims must be dismissed for failure to state a claim upon which relief can be granted]

Dated: February 17, 2012

*Kristin H. Mowry*, *Jeffrey S. Grimson*, *Jill A. Cramer*, *Sarah M. Wyss*, and *Susan L. Brooks*, Mowry & Grimson, PLLC, of Washington, DC and *Kevin K. Russell*, Goldstein, Howe & Russell, P.C., of Bethesda, MD, for plaintiff.

*Jessica R. Toplin*, *David S. Silverbrand*, *Courtney S. McNamara*, and *Michael J. Dierberg*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of

Justice, of Washington, DC, for defendant United States.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the briefs was *Andrew G. Jones*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

   *Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

   *Joseph W. Dorn* and *Jeffrey M. Telep*, King & Spalding, LLP, of Washington, DC, for defendant-intervenors the American Furniture Manufacturers Committee for Legal Trade, Kincaid Furniture Co., Inc., L. & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc.  With them on the briefs was *Taryn K. Williams*.  Of counsel on the briefs was *Richard H. Fallon*, of Cambridge, MA.

   Stanceu, Judge: Plaintiff Standard Furniture Manufacturing Co., Inc. ("Standard"), a domestic furniture manufacturer, brought four separate actions, now consolidated,[1] during the period of January 31, 2007 through March 4, 2010, all stemming from certain administrative determinations of the U.S. International Trade Commission ("ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs" or "CBP").  The ITC did not include Standard on the list of entities potentially eligible for status as an "affected domestic producer" ("ADP") under the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA" or "Byrd Amendment"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75, 19 U.S.C. § 1675c (2000),[2] *repealed by* Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a),

---

   [1] Due to the presence of common issues, the court, on February 15, 2011, consolidated plaintiff's four actions under Consol. Court No. 07-00028.  Order (Feb. 15, 2011), ECF No. 57.  Consolidated with *Standard Furniture Mfg. Co. v. United States* under Consol. Court No. 07-00028 are *Standard Furniture Mfg. Co. v. United States*, Court No. 07-00295, *Standard Furniture Mfg. Co. v. United States*, Court No. 09-00027, and *Standard Furniture Mfg. Co. v. United States*, Court No. 10-00082.

   [2] Citations are to the version of the Continued Dumping and Subsidy Offset Act

(continued...)

120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007). If the ITC had included Standard on the list of companies potentially eligible for ADP status, Standard might have qualified for annual monetary distributions by Customs of antidumping duties collected under an antidumping duty order on imports of wooden bedroom furniture from the People's Republic of China. *Notice of Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4, 2005) ("*Antidumping Duty Order*"). The ITC construed the "petition support requirement" of the CDSOA, under which distributions are limited to petitioners and parties in support of a petition, to disqualify Standard from the list of potential ADPs because Standard indicated to the ITC that it opposed the petition that resulted in the antidumping duty order.

Plaintiff claims that the administrative actions of the two agencies were inconsistent with the CDSOA, were not supported by substantial evidence, and were otherwise not in accordance with law. Plaintiff also brings constitutional challenges grounded in the First Amendment, the Fifth Amendment equal protection guarantee, and the Fifth Amendment due process guarantee.

Before the court are four dispositive motions. On February 23, 2011, defendant-intervenors American Furniture Manufacturers Committee for Legal Trade, Kincaid Furniture Co., Inc., L. & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc. moved to dismiss under Rule 12(b)(5) and for judgment on the pleadings under Rule 12(c). Def.-intervenors' Mot. to Dismiss & for J. on the Pleadings (Feb. 23, 2011), ECF No. 61 ("Def.-

---

[2](...continued)
("CDSOA") found at 19 U.S.C. § 1675c (2000). All other citations to the United States Code are to the 2006 edition.

intervenors' Feb. Mot."). After the court granted plaintiff leave to amend its complaints in Court

Nos. 07-00028 and 07-00295, defendant-intervenors moved to dismiss under USCIT Rule

12(b)(5). Def.-intervenors' Mot. to Dismiss Case Nos. 07-00028 & 07-00295 (April 1, 2011),

ECF No. 83 ("Def-intervenors' Apr. Mot."). Defendants ITC and Customs moved to dismiss

under Rule 12(b)(5) on May 2, 2011. Def. U.S. Customs & Border Protection's Mot. to Dismiss

the Second Amended Compl. for Failure to State a Claim upon which Relief can be Granted

(May 2, 2011), ECF No. 92 ("Customs' Mot."); Def. U.S. Int'l Trade Comm'n's Mot. to Dismiss

for Failure to State a Claim (May 2, 2011), ECF No. 91 ("ITC's Mot.").

Also before the court is Standard's motion for a preliminary injunction, filed January 11,

2012. Pl.'s Mot. for Prelim. Inj. (Jan. 11, 2012), ECF No. 110. Standard seeks to halt, pending a

final disposition of this litigation, including all appeals and remands, CBP's pending distribution

of certain collected antidumping duties to domestic parties recognized as ADPs by the

Commission, including the defendant-intervenors in this case. *Id.* at 1. The distribution was

scheduled to occur on or after January 31, 2012.[3] Def. U.S. Customs & Border Protection's

Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 66. Customs withheld these

funds from distribution pending the resolution of various lawsuits, including plaintiff's,

challenging the constitutionality of the CDSOA.

The court concludes that relief is not available on plaintiff's claims challenging the

administration of the CDSOA by the two agencies. We also conclude that no relief can be

granted on Standard's claims challenging the CDSOA on First Amendment and Fifth

---

[3] Defendants represent that distribution is now scheduled to take place on or after
March 9, 2012. Def.'s Mot. for an Extension of Time for all Defs. to File Their Resps. in Opp'n
to Pl.'s Mot. for Prelim. Inj. 2 (Jan. 19, 2012), ECF No. 112.

Amendment equal protection grounds. Plaintiff lacks standing to assert the claims it bases on

Fifth Amendment due process grounds. Finally, plaintiff does not satisfy the standards for

obtaining the injunction it seeks. The court will enter judgment dismissing this action.

## I. BACKGROUND

During a 2003 ITC investigation to determine whether imports of wooden bedroom

furniture from China were causing or threatening to cause material injury to the domestic

industry, *Initiation of Antidumping Duty Investigation: Wooden Bedroom Furniture from the*

*People's Republic of China*, 68 Fed. Reg. 70,228, 70,231 (Dec. 17, 2003), Standard responded to

the ITC's questionnaires, indicating that it opposed the issuance of an antidumping duty order.

*See, e.g.*, First Amended Compl. ¶ 19 (Mar. 23, 2011), ECF No. 81. Based on the affirmative

ITC injury determination, the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") issued the antidumping duty order on imports of wooden

bedroom furniture from China in 2005. *Antidumping Duty Order*, 70 Fed. Reg. at 329.

Determining that Standard had not supported the petition so as to qualify it for CDSOA benefits,

ITC declined to place Standard on the list of potential ADPs with respect to this order for Fiscal

Years 2006 through 2010. *Distribution of Continued Dumping & Subsidy Offset to Affected*

*Domestic Producers*, 71 Fed. Reg. 31,336, 31,375-76 (June 1, 2006); *Distribution of Continued*

*Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23

(May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic*

*Producers*, 73 Fed. Reg. 31,196, 31,236-37 (May 30, 2008); *Distribution of Continued Dumping*

*& Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,855-56

(May 29, 2009);  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,571-72 (June 1, 2010).

Plaintiff filed actions contesting the government's refusal to provide it CDSOA distributions of antidumping duties collected during Fiscal Years 2006 (Court No. 07-00028), 2007 (Court No. 07-00295), 2008 (Court No. 09-00027), and 2009-2010 (Court No. 10-00082). The court stayed the four actions pending a final resolution of other litigation raising the same or similar issues.[4]  *See, e.g.*, Order (June 11, 2007), ECF No. 37.

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in *SKF USA Inc. v. United States*, 556 F.3d 1337 (2009) ("*SKF*"), *cert. denied*, 130 S. Ct. 3273 (2010), which addressed legal questions also present in this case, the court issued an order directing Standard to show why these actions should not be dismissed and lifted the stay for the purposes of allowing any brief, response, or reply described in that order.  *See, e.g.*, Order (Jan. 3, 2011), ECF No. 45.  On February 1, 2011, plaintiff responded to the court's order and moved for a partial lift of the stay to allow amendment of the complaints in Court Nos. 07-00028 and 07-00295 as a matter of course to add an additional count challenging the CDSOA under the First Amendment as applied to Standard.  *See, e.g.*, Pl.'s Br. in Resp. to the Ct.'s Order to Show Cause (Feb. 1, 2011), ECF No. 50 ("Pl.'s Br."); Mot. for Leave to Amend Compl. (Jan. 24, 2011), ECF No. 47; Proposed First Am. Compl. ¶ 50 (Jan. 24, 2011), ECF No. 47; Mot. for

---

[4] The court's orders stayed the actions "until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States International Trade Commission*, Consol. Court No. 06-00290, that is, when all appeals have been exhausted." Order (June 11, 2007), ECF No. 37.  The language of the court's stay orders in the other consolidated actions was substantially the same.

Leave to Amend Compl. (Jan. 24, 2011), ECF No. 45 (Court No. 07-00295); Proposed Second

Am. Compl. ¶ 50 (Jan. 24, 2011), ECF No. 45 (Court No. 07-00295).

The court lifted the stay for all purposes on February 9, 2011. *See, e.g.*, Order (Feb. 9,

2011), ECF No. 52. The same day, plaintiff filed notices of amended complaints in Courts Nos.

09-00027 and 10-00082. First Amended Compl. (Feb. 9, 2011), ECF No. 32 (Court No.

09-00027); First Amended Compl. (Feb. 9, 2011), ECF No. 29 (Court No. 10-00082). On

February 15, 2011, the court consolidated *Standard Furniture Mfg. Co. v. United States*, Court

No. 07-00295, *Standard Furniture Mfg. Co. v. United States*, Court No. 09-00027, and *Standard*

*Furniture Mfg. Co. v. United States*, Court No. 10-00082 under Consol. Court No. 07-00028.

Order (Feb. 15, 2011), ECF No. 57. Defendant-intervenors filed their motions to dismiss the

consolidated action and for judgment on the pleadings on February 23, 2011. Def-intervenors'

Feb. Mot. On March 23, 2011, this court acknowledged plaintiff's amendment of its complaints

in Court Nos. 09-00027 and 10-00082, granted plaintiff's motion to amend the complaints in

Court Nos. 07-00028 and 07-00295, and accepted the amended complaints in the 2007 actions

for filing in the consolidated action. *Standard Furniture Mfg. Co. v. United States*, 35 CIT __,

Slip Op. 11-32 (Mar. 23, 2011); First Amended Compl.; Second Amended Compl., ECF No. 82

(Court No. 07-00295). Defendant-intervenors filed a motion to dismiss the consolidated action

on April 1, 2011. Def-intervenors' Apr. Mot. The ITC and Customs filed their motions to

dismiss the consolidated action on May 2, 2011. ITC's Mot.; Customs' Mot.

In July 2011, plaintiff filed a notice of supplemental authority highlighting recent

decisions by the U.S. Supreme Court, which, according to plaintiff, are "relevant to the pending

motions to dismiss Standard's as-applied First Amendment challenge to the government's

implementation of the [CDSOA]."  Notice of Supp. Authority 1 (July 7, 2011), ECF No. 105

("Pl.'s Notice of Supp. Authority") (citing *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011);

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2086 (2011); *Citizens*

*United v. Federal Election Comm'n*, 130 S. Ct. 876 (2010)).  Defendant-intervenors filed a reply

to this letter, and both defendants addressed the supplemental authority question in their reply

briefs.  Def.-intervenor's Resp. to Pl.'s Notice of Supplemental Authority (July 22, 2011),

ECF No. 109; United States & U.S. Customs & Border Protection's Reply in Supp. of their Mot.

to Dismiss for Failure to State a Claim upon which Relief Can Be Granted 5-6 n.4 (July 14,

2011), ECF No. 107; Def. U.S. Int'l Trade Comm'n's Reply to Pl.'s Br. in Opp'n to Mot. to

Dismiss for Failure to State a Claim 12-14 (July 14, 2011), ECF No. 108.

     Standard filed its motion for a preliminary injunction on January 11, 2012, seeking to

prevent the pending CBP distribution.  Pl.'s Mot. for Prelim. Inj.; Pl.'s Mem. of Points &

Authorities in Supp. of Mot. for Prelim. Inj. (Jan. 11, 2012), ECF No. 110.

## II. DISCUSSION

     The court exercises jurisdiction over this action according to section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(i)(4), which provides the Court of International Trade

jurisdiction of civil actions arising out of any law of the United States, such as the CDSOA,

providing for administration with respect to duties (including antidumping duties) on the

importation of merchandise for reasons other than the raising of revenue.  *See Furniture Brands*

*Int'l v. United States*, 35 CIT __, __, 807 F. Supp. 2d 1301, 1307-10 (2011) ("*Furniture*

*Brands*").

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the distribution

of funds from assessed antidumping and countervailing duties to persons with ADP status, which

is limited to petitioners, and interested parties in support of petitions, with respect to which

antidumping duty and countervailing duty orders are entered. 19 U.S.C. § 1675c(a)-(d).[5] The

statute directed the ITC to forward to Customs, within sixty days after an antidumping or

countervailing duty order is issued, lists of "petitioners and persons with respect to each order

and finding and a list of persons that indicate support of the petition by letter or through

questionnaire response." *Id.* § 1675c(d)(1).[6] The CDSOA directed Customs to publish in the

Federal Register lists of entities potentially eligible to be ADPs for distributions of a "continuing

dumping and subsidy offset" based on the lists obtained from the Commission. *Id.*

§ 1675c(d)(2). The CDSOA also directed Customs to segregate antidumping and countervailing

duties according to the relevant antidumping or countervailing duty order, to maintain these

duties in special accounts, and to distribute to an ADP annually, as reimbursement for incurred

qualifying expenditures, a ratable share of the funds (including all interest earned) from duties

---

[5] The CDSOA provided that:
> The term "affected domestic producer" means any manufacturer, producer, farmer,
> rancher or worker representative (including associations of such persons) that
> (A) was a petitioner *or interested party in support of the petition* with respect to
> which an antidumping duty order, a finding under the Antidumping Act of 1921, or a
> countervailing duty order has been entered, and
> (B) remains in operation.

19 U.S.C. § 1675c(b)(1) (emphasis added).

[6] Additionally, the CDSOA directed the U.S. International Trade Commission to forward
to U.S. Customs and Border Protection a list identifying potential affected domestic producers
"within 60 days after the effective date of this section in the case of orders or findings in effect
on January 1, 1999 . . . ." 19 U.S.C. § 1675c(d)(1). The antidumping duty order at issue in this
case was not in effect on that date.

assessed on a specific unfairly traded product that were received in the preceding fiscal year. *Id.*

§ 1675c(d)(3), (e).[7]

In February 2009, approximately two years after plaintiff filed the first of its four actions,

the Court of Appeals decided *SKF*, upholding the CDSOA against constitutional challenges

brought on First Amendment and Fifth Amendment equal protection grounds.  556 F.3d at 1360.

*SKF* reversed the decision of the Court of International Trade in *SKF USA Inc. v. United States*,

30 CIT 1433, 451 F. Supp. 2d 1355 (2006), which held the petition support requirement of the

CDSOA unconstitutional on Fifth Amendment equal protection grounds.

We address below the motions to dismiss, basing our rulings on the five claims that are

stated in plaintiff's First Amended Complaints.  In Count 1 of the amended complaints, plaintiff

claims that defendants' actions were unlawful under the CDSOA and not supported by

substantial evidence.[8]  First Amended Compl. ¶¶ 39-40.  In Counts 2 and 5, plaintiff challenges

the "in support of the petition" requirement of the CDSOA ("petition support requirement") on

constitutional First Amendment grounds.  *Id.* ¶¶ 41-43, 49-50.  In Count 3, plaintiff brings a

---

[7] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ."  Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

[8] Plaintiff's four First Amended Complaints are essentially identical but directed to CDSOA distributions for the different Fiscal Years, *i.e.,* 2006, 2007, 2008, 2009, and 2010.  In citing to the claims in the consolidated action, the court will cite to the First Amended Complaint as filed in *Standard Furniture Manufacturing Co., Inc., v. United States*, Court No. 07-00028.

challenge to the petition support requirement on Fifth Amendment equal protection grounds. *Id.*

¶¶ 44-46.  In Count 4, plaintiff challenges the petition support requirement on Fifth Amendment

due process grounds, claiming that the CDSOA is impermissibly retroactive. *Id.* ¶¶ 47-48.  We

also address, in Part II(C) of this opinion, plaintiff's motion for an injunction.

A.  No Relief Can Be Granted on the Claims in Counts 1, 2, 3, and 5 of the Amended Complaints

          In ruling on motions to dismiss made under USCIT Rule 12(b)(5), we dismiss complaints

that do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For the reasons discussed below, we conclude

that plaintiff has failed to plead facts on which we could conclude that it could obtain a remedy

on any of the claims asserted in Counts 1, 2, 3, and 5 of the amended complaints.  In brief

summary, plaintiff's claims that the actions by the two agencies were not supported by

substantial evidence and were otherwise not in accordance with law must be dismissed because

Standard admits a fact establishing its disqualification from receiving CDSOA distributions and

presents no other facts from which the court could reach a conclusion that those actions must be

set aside.  Relief on Standard's constitutional claims under the First Amendment and the equal

protection guarantee of the Fifth Amendment is foreclosed by the binding precedent established

by *SKF*, which upheld the CDSOA against constitutional challenges brought on First

Amendment and equal protection grounds.  In the following, we address Counts 1 through 3, and

Count 5, in further detail.[9]

---

          [9] Although relief on the Fifth Amendment due process claims that plaintiff bases on
retroactivity, which are stated in Count 4 of its amended complaints, is not foreclosed by binding

(continued...)

### 1.  Count 1 Fails to State a Claim upon which Relief Can Be Granted

In Count 1, plaintiff claims that "[t]he Commission's determination not to include Standard on its list of affected domestic producers for the antidumping order covering wooden bedroom furniture from China and Customs' failure to make distributions to Standard, were inconsistent with the CDSOA, were not supported by substantial evidence, and were otherwise not in accordance with law."  First Amended Compl. ¶¶ 39-40.  We conclude that Count 1 fails to state a claim upon which relief can be granted and, therefore, must be dismissed.

Plaintiff alleges that "[d]uring the injury phase of the antidumping investigation covering wooden bedroom furniture from China, Standard filed timely and complete questionnaire responses to the Commission's domestic producer and importer questionnaires."  *Id.* ¶ 19.  The CDSOA language pertinent to the issue raised by Count 1 is the directive that the ITC, in providing its list to Customs, include "a list of persons that *indicate support of the petition* by letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1) (emphasis added).  Standard's filing of questionnaire responses without an indication of support for the petition does not satisfy the petition support requirement.  Moreover, plaintiff admits that "[in] its questionnaire responses, Standard indicated that it opposed the petition."  First Amended Compl. ¶ 19.  Doing so disqualified Standard from receiving CDSOA distributions.

In opposing dismissal of Count 1, plaintiff argues that "[in] *SKF*, the Federal Circuit adopted a saving construction of the CDSOA that could otherwise have violated the First Amendment by conditioning receipt of CDSOA payments on the content of a domestic

---

[9](...continued)
precedent, we conclude in Part II(B) of this opinion that Standard has no standing to bring these claims.

producer's speech."  Pl.'s Resp. to Def.'s May 2, 2011 Mot. to Dismiss 9 (Jun. 6, 2011), ECF

No. 101 ("Pl.'s Resp.").  Plaintiff submits that, due to this saving construction, *SKF* does not

support dismissal of Standard's claims but rather "makes clear that Standard is entitled to

disbursements under the statute, constitutionally construed." *Id.* (footnote omitted).  Plaintiff

views *SKF* to hold "that the CDSOA 'only permit[s] distributions to those who actively

supported the petition (i.e., a party that did no more than submit a bare statement that it was a

supporter without answering questionnaires or otherwise actively participating would not receive

distributions).'" *Id.* at 10 (quoting *SKF*, 556 F.3d at 1353 n.26) (alteration in original).  Under

this saving construction, plaintiff argues, SKF USA Inc. ("SKF"), the plaintiff in *SKF*, "was

ineligible to receive distributions *not* because it opposed the petition in its responses to the ITC

questionnaire, but rather because it *actively opposed* the petition in other concrete ways that

placed it in 'a role that was nearly indistinguishable from that played by a defendant in a qui tam

or attorney's fees award case.'" *Id.* at 11 (quoting *SKF*, 556 F.3d at 1358).  According to

plaintiff, "[in] light of this substantial opposition, . . . the First Amendment did not bar denying

[SKF] a share in antidumping duties" but "compels the opposite result" in this case because,

"[by] contrast, Standard took no similar steps to 'impede the investigation,' nor did it express a

'refus[al] to cooperate' with the Government." *Id.* at 11-12 (quoting *SKF*, 556 F.3d at 1359)

(second alteration in original).

     Plaintiff's argument is based on an incorrect understanding of the *SKF* holding.  The

Court of Appeals did not construe the CDSOA such that a domestic producer may express

opposition to a petition in its ITC questionnaire response and still be eligible to receive CDSOA

distributions, so long as the producer does not take additional steps that amount to "substantial

opposition" to the petition.  The opinion in *SKF* recounts the various steps SKF took in opposing

an antidumping duty order that were beyond merely indicating opposition to the petition on a

questionnaire response, but it did so in the context of explaining why it considered the petition

support requirement not to be overly broad, and therefore permissible, under the test established

by *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

*SKF*, 556 F.3d at 1357-59.  The Court of Appeals reasoned that in enacting the petition support

requirement Congress permissibly, and rationally, could conclude that those who did not support

a petition should not be rewarded.  *Id.* at 1357, 1359.

Defendants' determinations denying benefits to Standard comported with the CDSOA.

Therefore, we reject plaintiff's claims that either or both of the agencies acted contrary to law.

### 2.  Relief on Plaintiff's First Amendment Claims Is Foreclosed by Binding Precedent

In Count 2 of the First Amended Complaints, plaintiff claims that the petition support

requirement "violates the First Amendment to the Constitution."  First Amended Compl. ¶ 42.

Standard claims, specifically, that "[d]efendants' application of the [CDSOA] conditions receipt

of a government benefit on a private speaker['s] expressing a specific viewpoint  support for an

antidumping petition  and, therefore, is viewpoint discrimination in contravention of the First

Amendment."  *Id.* ¶ 43.  Count 5 of plaintiff's First Amended Complaints contains an as-applied

challenge to the CDSOA that plaintiff also bases on the First Amendment.  *Id.* ¶¶ 49-50.

Plaintiff claims that the CDSOA violates the First Amendment as applied to Standard "because it

discriminates against Standard based on expression of [Standard's] views rather than action

([Standard's] litgation support)."  *Id.* ¶ 50.

Relief on Standard's facial First Amendment claims is precluded by the holding in *SKF*,

556 F.3d at 1360 (holding that the Byrd Amendment is "valid under the First Amendment"

because it "is within the constitutional power of Congress to enact, furthers the government's

substantial interest in enforcing the trade laws, and is not overly broad."). The holding in *SKF*

also forecloses relief on plaintiff's as-applied First Amended claims. The Court of Appeals held

that the CDSOA did not violate constitutional First Amendment principles as applied to SKF,

which expressed in its response to the ITC's questionnaire its opposition to the antidumping duty

petition involved in that litigation. *See SKF*, 556 F.3d at 1343 (stating that "SKF also responded

to the ITC's questionnaire, but stated that it opposed the antidumping petition"). Standard, like

SKF, expressed opposition to the petition in its response to the ITC's questionnaire. First

Amended Compl. ¶ 19. Plaintiff fails to plead any facts allowing the court to conclude,

notwithstanding the binding precedent of *SKF*, that the CDSOA was applied to Standard in a

manner contrary to the First Amendment. In all material respects, Standard's expression of

opposition to an antidumping duty petition was equivalent to that of SKF and properly resulted in

Standard's disqualification from receiving distributions under the CDSOA.

In support of its as-applied First Amendment claims, Standard directs the court's

attention to the Supreme Court's decisions in *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), *Citizens*

*United v. Federal Election Comm'n*, 130 S. Ct. at 876, *Sorrell v. IMS Health, Inc.*, 131 S. Ct.

at 2653, and *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. at 2806.

According to plaintiff, these recent decisions have "rendered [the] conclusion of [*SKF*] utterly

untenable. . . . Today, it is clear that corporate speech relating to matters such as international

trade and law enforcement is entitled to the strictest First Amendment protection." Pl.'s

Resp. 21. We recently addressed these arguments in our opinions in *Ashley Furniture Industries,*

*Inc. v. United States*, 36 CIT __, __, Slip Op. 12-14, at 16-25 (Jan. 31, 2012) ("*Ashley*

*Furniture*") and *Furniture Brands*, 35 CIT __, __, 807 F. Supp. 2d at 1313-15. We conclude

here, as we did in those opinions, that the cases plaintiff cites do not implicitly overturn *SKF* or

otherwise require us to apply a level of scrutiny to the CDSOA different from that applied in

*SKF*.

In *Snyder v. Phelps*, the Supreme Court held that members of the Westboro Baptist

Church who picketed near the funeral of a member of the U.S. Marine Corps killed in the line of

duty in Iraq could not be held liable on state-law tort claims alleging intentional infliction of

emotional distress, intrusion upon seclusion, and civil conspiracy. 131 S. Ct. at 1213-14, 1220.

Concluding that the various messages condemning the United States and its military displayed on

the picketer's signs were entitled to "'special protection' under the First Amendment," *id.*

at 1219, the Supreme Court held that the jury verdict holding the Westboro picketers liable on

the tort claims for millions of dollars in damages must be set aside as an impermissible burden on

protected speech, even if the picketing caused emotional distress to the mourners, *id.* at 1213,

1220. The Supreme Court cautioned that its holding was narrow and limited only to the

particular facts before it, having emphasized that the picketers carried signs displaying messages

that, for the most part, constituted speech addressing matters of public concern, *id.* at 1216-17,

and conducted their picketing peacefully, and without interfering with the funeral, at each of

three locations the Supreme Court considered to be a public forum, *id.* at 1218-19.

Plaintiff maintains that "[in] light of the Court's decision in *Snyder*, there can be no

dispute that opposition to a government antidumping investigation constitutes speech on a matter

of public concern, subject to full First Amendment protection" and that to the extent that *SKF*

rested on a belief that this opposition does not constitute political speech, "*Snyder* demonstrates

that the Federal Circuit erred." Pl.'s Resp. 22. *Snyder*, however, resolved a First Amendment

question differing from those presented by this case and by *SKF*. Standard is not asserting First

Amendment rights as a defense against civil liability for an award of monetary damages. The

"burden" the CDSOA placed on Standard's speech  ineligibility for potential CDSOA

distributions  does not rise to a level commensurate with the burden the Supreme Court

addressed by setting aside the jury verdict against the Westboro picketers. In speaking to a

different First Amendment issue than the one Standard raises, *Snyder* does not establish a

principle of First Amendment law under which we may invalidate the CDSOA petition support

requirement in response to Standard's as-applied challenge.

        In *Citizens United v. Federal Election Commission*, the Supreme Court struck down a

federal election law imposing an "outright ban, backed by criminal sanctions" on independent

expenditures by "corporation[s]," including "nonprofit advocacy corporations" or "unions,"

during the thirty-day period preceding a primary election or the sixty-day period preceding a

general election, for an "electioneering communication" or for advocacy of the election or defeat

of a candidate. 130 S. Ct. at 886-87, 897. Reasoning that "political speech must prevail against

laws that would suppress it, whether by design or inadvertence," the Supreme Court concluded

that "[l]aws that burden political speech are 'subject to strict scrutiny,' which requires the

Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored

to achieve that interest.'" *Id.* at 898 (citing *Federal Election Comm'n v. Wisconsin Right to Life,*

*Inc.*, 551 U.S. 449, 464 (2007)).

Standard argues that the holding in *SKF* cannot stand now that the Supreme Court has

"made perfectly clear that so long as speech relates to matters of public concern, it is entitled to

the highest form of constitutional protection, even if it involves corporations or 'activities of a

commercial nature.'" Pl.'s Resp. 23 (quoting *SKF*, 556 F.3d at 1355). According to plaintiff,

applying a lesser standard of scrutiny to the petition support requirement, as the Court of Appeals

did in *SKF* based on a perceived statutory purpose of rewarding cooperation with the

government, "is incompatible with *Citizens United.*" *Id.* Positing that the petition support

requirement as applied to entities like Standard "is calculated to silence  or at least

discourage  dissent against proposed antidumping actions," plaintiff argues that "[t]his sort of

arm-twisting cannot withstand constitutional scrutiny after *Citizens United.*" *Id.* at 24.

   *Citizens United* does not hold that any statute affecting speech relating to matters of

public concern, whether made by individuals or corporations, is to be subjected to a strict

scrutiny standard. The statute struck down in *Citizens United* banned political speech, and the

Supreme Court's decision to apply strict scrutiny can only be viewed properly in that context. As

the Court of Appeals recognized in *SKF*, the CDSOA "does not prohibit particular speech," that

"statutes prohibiting or penalizing speech are rarely sustained," and that "cases addressing the

constitutionality of such statutes are of little assistance in determining the constitutionality of the

far more limited provisions of the Byrd Amendment." 556 F.3d. at 1350. The Court of Appeals

reasoned that "[in] considering limited provisions that do not ban speech entirely, the purpose of

the statute is important," and concluded that "[n]either the background of the statute, nor its

articulated purpose, nor the sparse legislative history supports a conclusion that the purpose of

the Byrd Amendment was to suppress expression." *Id.* at 1350-51. Contrary to this view,

Standard maintains that "the Supreme Court in *Citizens United* made clear that the degree of

First Amendment protection afforded corporate speech on matters of public concern does not

vary depending on whether the government directly prohibits speech or instead withholds

benefits based on speech." Pl.'s Resp. 24 (citing *Citizens United*, 130 S. Ct. at 905). Thus,

plaintiff's argument would have us consider immaterial the distinction between the CDSOA,

which does not prohibit speech, and the statute struck down in *Citizens United*, which had as its

purpose and effect the suppression of political speech through an "outright ban, backed by

criminal sanctions." *Citizens United*, 130 S. Ct. at 897.

Plaintiff misreads *Citizens United*. In the passage from the opinion to which plaintiff

directs our attention, the Supreme Court explained that it no longer subscribes to certain

reasoning expressed in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), which

*Citizens United* overturned. *Citizens United* signaled the Supreme Court's rejection of the notion

that the special state-law advantages corporations enjoy over wealthy individuals, such as limited

liability, perpetual life, and favorable treatment of accumulation and distribution of assets, can

suffice to allow laws "prohibiting speech," *i.e.*, laws prohibiting corporations from speaking on

matters of public concern. 130 S. Ct. at 905. Plaintiff misconstrues the Supreme Court's

explanation to mean broadly that "[w]hile the government has no obligation to provide those

benefits to corporations, the Court made clear that the government may not condition

corporations' receipt of these benefits on corporations' foregoing full First Amendment

protection for their speech." Pl.'s Resp. 24 (citing *Citizens United*, 130 S. Ct. at 905). Rather,

the Supreme Court was specific in concluding that the granting of benefits to corporations under

state laws "does not suffice, however, to allow laws *prohibiting* speech." *Citizens United*,

130 S. Ct. at 905 (emphasis added).  Because the CDSOA is not a prohibitory statute, and

because the relevant purpose of the CDSOA is to reward petitioners and those in support of

petitions, we reject the argument that *Citizens United* implicitly invalidates the *SKF* analysis

upholding the CDSOA against attack on First Amendment grounds.

Plaintiff argues, next, that in the wake of the Supreme Court's decision in *Sorrell*, the

conclusion that intermediate scrutiny should be applied to the CDSOA "despite the CDSOA's

viewpoint discrimination" is a conclusion that "can no longer stand" and that the CDSOA now

must be subjected to "heightened judicial scrutiny."  Pl.'s Notice of Supp. Authority 2 (citing

*Sorrell*, 131 S. Ct. at 2663-64).  We reject the argument that *Sorrell* implicitly overturned *SKF*.

In *Sorrell*, the Supreme Court struck down a Vermont statute (the "Prescription

Confidentiality Law") that prohibited, subject to certain exceptions, the sale, disclosure, and use

of "prescriber-identifying information," which is information obtained from pharmacy records

that reveals the drug prescribing practices of individual physicians.  131 S. Ct. at 2660 (citation

omitted).  The statute prohibited pharmacies, health insurers, and similar entities from selling this

information, or allowing such information to be used for marketing, without the prescriber's

consent, and it prohibited pharmaceutical manufacturers and marketers from using such

information for marketing without the prescriber's consent.  *Id.*  The statute authorized the

Vermont attorney general to pursue civil remedies against violators.  *Id.*

The Supreme Court concluded that the Prescription Confidentiality Law "enacts

content-and speaker-based restrictions on the sale, disclosure, and use of prescriber-identifying

information."  *Id.* at 2663.  Under the "heightened scrutiny" the Supreme Court considered to be

warranted, "the State must show at least that the statute directly advanced a substantial

government interest and that the measure is drawn to achieve that interest." *Id.* at 2667-68. The

Court concluded that the State of Vermont failed to make that showing. The Court considered

that the stated interest of promoting medical privacy and physician confidentiality did not justify

the prohibitions placed on the sale and use of the information. *Id.* at 2668. The Court noted that

the law allowed wide dissemination of the information but effectively prohibited use of the

information by a class of disfavored speakers ("detailers," who used the prescriber-identifying

information to promote brand-name drugs on behalf of pharmaceutical manufacturers) and in

effect prohibited a disfavored use, marketing. *Id.* Under the Supreme Court's analysis, the

Vermont law "forbids sale" of the information "subject to exceptions based in large part on the

content of a purchaser's speech," disfavors "marketing, that is, speech with a particular content,"

and "disfavors specific speakers, namely, pharmaceutical manufacturers." *Id.* at 2663. Another

purpose the State of Vermont advanced in support of the Prescription Confidentiality Law,

reducing health care costs and promoting public health, also failed to justify the burden on

speech. *Id.* at 2668, 2670. In restraining certain speech by certain speakers, and specifically, in

diminishing the ability of detailers to influence prescription decisions, the statute sought to

influence medical decisions by the impermissible means of keeping physicians from receiving

the disfavored information. *Id.* at 2670-71.

　　　*Sorrell* and *SKF* analyze dissimilar statutes, which vary considerably in the nature and

degree of the effect on expression as well as in purpose. *SKF* concluded that the CDSOA does

not have as a stated purpose, or even an implied purpose, the intentional suppression of

expression, *SKF*, 556 F.3d at 1351-52, whereas the Vermont statute authorized civil remedies

against those selling or using the prescriber-identifying information that the statute sought to

suppress. *See Sorrell*, 131 S. Ct. at 2660. *Sorrell* does not require us to review the CDSOA

according to a First Amendment analysis differing from that applied by the Court of Appeals in

*SKF*. In analyzing the Vermont statute, the Supreme Court stated in *Sorrell* that "the State must

show at least that the statute directly advances a substantial government interest and that the

measure is drawn to achieve that interest." 131 S. Ct. at 2667-68 (citing *Board of Trustees of*

*State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480-81 (1989); *Central Hudson*, 447 U.S. at 566). *SKF*

concluded that "SKF's opposition to the antidumping petition is protected First Amendment

activity," 556 F.3d at 1354, and applied a test to which it referred to as the "well established

*Central Hudson* test," *id.* at 1355. The Court of Appeals described this test as requiring that

regulation of commercial speech be held permissible if the asserted governmental interest is

substantial, the regulation directly advances that interest, and the regulation is not more extensive

than is necessary to serve that interest. *Id.* (citing *Central Hudson*, 447 U.S. at 566). We reject

plaintiff's argument that *Sorrell* requires us to apply to the CDSOA a level of scrutiny different

from that applied by the Court of Appeals in *SKF*.

In *Arizona Free Enterprise*, the Supreme Court struck down an Arizona campaign finance

law imposing a "matching funds scheme" that "substantially burdens protected political speech

without serving a compelling state interest and therefore violates the First Amendment." 131 S.

Ct. at 2813. Under the Arizona statute, candidates for state office who agreed to accept public

funding received matching funds when the allotment of state funds to the publicly financed

candidate were exceeded by an amount calculated according to the amount a privately funded

candidate received in contributions (including the candidate's "contribution" of expenditures of

personal funds), combined with the expenditures independent groups made in support of the

privately funded candidate or in opposition to a publicly funded candidate. *Id.* at 2313-14.

According to plaintiff, "the Supreme Court's decision in *Arizona Free Enterprise* demonstrates that, contrary to the government's position, strict scrutiny applies to viewpoint discrimination that falls short of an 'outright ban'" and that "[in] *SKF*, the Federal Circuit declined to apply heightened scrutiny even though the CDSOA has the equivalent effect, providing a subsidy to the direct economic competitors of those engaging in disfavored speech." Pl.'s Notice of Supp. Authority 3-4. Therefore, plaintiff argues, *SKF* "is no longer compatible with Supreme Court precedent." *Id.* at 4.

We do not agree that the Supreme Court's holding in *Arizona Free Enterprise* implicitly invalidates the holding in *SKF*. *Arizona Free Enterprise* is one of a line of Supreme Court cases that struck down laws affecting speech during campaigns for political office. That line of cases includes *Citizens United*, discussed *supra*, and *Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008), which invalidated a federal statute under which a new, asymmetrical regulatory scheme of limits on campaign donations of individuals in elections for the U.S. House of Representatives was triggered when one candidate in such an election spent more than $350,000 of personal funds on the race. *Arizona Free Enterprise*, 131 S. Ct. at 2818. The Supreme Court grounded its reasoning in *Arizona Free Enterprise* partly on the principle that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Id.* (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989)) (internal quotation omitted). Stating in *Arizona Free Enterprise* that "[t]he logic of *Davis* largely controls our approach to this case," the Supreme Court found the burdens the Arizona law imposed on speech uttered during a campaign to impose an even more onerous penalty on the

free speech of a privately funded candidate than did the federal statute invalidated in *Davis* and to

inflict a penalty on groups making or desiring to make independent expenditures. *Id.* at 2818-20.

Under the Arizona law's scheme, "[t]he direct result of the speech of privately financed

candidates and independent expenditure groups is a state-provided monetary subsidy to a

political rival." *Id.* at 2821. Contrary to plaintiff's argument, the CDSOA does not bear more

than a superficial resemblance to the laws invalidated in *Arizona Free Enterprise*, *Davis* (a case

decided prior to *SKF*), and similar such cases, which regulated and impermissibly burdened

political speech during an election by restricting campaign expenditures. Accordingly, we reject

Standard's contention that *Arizona Free Enterprise* established a new First Amendment principle

requiring us to disregard the holding in *SKF* and to apply a strict scrutiny analysis to the CDSOA.

In summary, *SKF* remains binding precedent that is controlling on the disposition of

plaintiff's as-applied First Amendment claims. These claims must be dismissed according to

USCIT Rule 12(b)(5).

### 3.  Relief on Plaintiff's Equal Protection Claims Is Foreclosed by Precedent

In Count 3 of the amended complaints, plaintiff claims that the petition support

requirement of the CDSOA "violates the Equal Protection Clause of the Constitution because

Defendants have created a classification that implicates Standard's fundamental right of speech

and Defendants' actions are not narrowly tailored to a compelling government objective." First

Amended Compl. ¶ 45. Count 3 claims, further, that defendants' application of the CDSOA to

Standard "also violates the Equal Protection Clause because it impermissibly discriminates

between Standard and other domestic parties who expressed support for the relevant antidumping

petition, denying a benefit to Standard." *Id.* ¶ 46.

Relief on these claims is foreclosed by the holding in *SKF*. The Court of Appeals held in *SKF* that the CDSOA did not violate equal protection principles as applied to plaintiff SKF. Standard, like SKF, expressed opposition to the relevant antidumping duty petition and thus failed to satisfy the petition support requirement, 19 U.S.C. § 1675c(d)(1). *Compare* First Amended Compl. ¶ 19 ("In its questionnaire responses, Standard indicated that it opposed the petition.") *with SKF*, 556 F.3d at 1343 ("SKF also responded to the ITC's questionnaire, but stated that it opposed the antidumping petition."). Plaintiff points out that SKF "did much more than simply express abstract opposition to the petition," Pl.'s Resp. 11, but this fact does not distinguish the holding in *SKF* from the instant case. In ruling on claims that are not distinguishable from Standard's in any material way, the Court of Appeals held that "[b]ecause it serves a substantial government interest, the Byrd Amendment is . . . clearly not violative of equal protection under the rational basis standard," *SKF*, 556 F.3d at 1360, and that "the Byrd Amendment does not fail the equal protection review applicable to statutes that disadvantage protected speech," *id*. at 1360 n.38.

Because plaintiff fails to plead facts allowing the court to conclude that its equal protection claims are distinguishable from those brought, and rejected, in *SKF*, Count 3 must be dismissed for failure to state a claim upon which relief can be granted.

B.  Plaintiff Lacks Standing to Bring a Fifth Amendment Retroactivity Challenge to the CDSOA

Count 4 of the amended complaints challenges the CDSOA under the Due Process guarantee of the Fifth Amendment on the ground that the statute is impermissibly retroactive. Plaintiff claims that the petition support requirement of the CDSOA "violates the Due Process Clause of the Constitution because Defendants base Standard's eligibility for disbursements on

past conduct (*i.e.,* support for a petition)." First Amended Compl. ¶ 48. According to Count 4,

"[t]he Due Process Clause disfavors retroactive legislation, and Defendants' disbursements only

to those companies that express support for a petition is not rationally related to a legitimate

governmental purpose." *Id.*

We construe Standard's retroactivity claims, which are vaguely stated, to mean that the

CDSOA is impermissibly retroactive under the Fifth Amendment due process guarantee because

it conditions the receipt of distributions on a decision whether or not to support an antidumping

duty petition that was made before the statute went into effect, and thus before the affected party

making that decision could have had notice of the consequences. *See* 19 U.S.C. § 1675c(d)(1)

(directing the ITC to forward to Customs a list identifying petitioners and parties expressing

support for a petition "within 60 days after the effective date of this section in the case of orders

or findings in effect on January 1, 1999 . . .."). Because it applies to petition support decisions

made prior to enactment, the CDSOA may be characterized as having a retroactive aspect. *See*

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (considering a retroactive statute to be

one that attaches "new legal consequences to events completed before its enactment").

We previously have concluded that the CDSOA is not violative of the due process

guarantee because "the retroactive reach of the petition support requirement in the CDSOA is

justified by a rational legislative purpose and therefore is not vulnerable to attack on

constitutional due process grounds." *New Hampshire Ball Bearing Co., Inc. v. United States*, 36

CIT __, __, Slip Op. 12-2, at 14 (Jan. 3, 2012); *see also Schaeffler Grp. USA, Inc. v. United*

*States*, 36 CIT __, __, Slip Op. 12-8, at 11-12 (Jan. 17, 2012). We conclude that Standard's

retroactivity claims, when construed in this way, must be dismissed for lack of standing.[10]

Because the CDSOA was enacted in 2000, it was not applied retroactively to Standard, which

expressed opposition to the wooden bedroom furniture petition in 2003.  First Amended Compl.

¶¶ 18-19.  Standard, therefore, had the "opportunity to . . . conform [its] conduct accordingly."

*Landgraf*, 511 U.S. at 265.  As a consequence, plaintiff's amended complaints fail to allege an

injury in fact arising from conduct predating the CDSOA's enactment.  *See Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (citing *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992)) ("To satisfy Article III's standing requirements, a plaintiff must show

(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical . . .").

    Because the amended complaints do not allege facts from which we may conclude that

Standard has standing to bring the claims stated as Count 4, we must dismiss these claims for

lack of jurisdiction pursuant to USCIT Rule 12(b)(1).

---

[10] It is also possible to construe Standard's retroactivity claims, when read literally, to mean that the CDSOA is impermissibly retroactive under the due process guarantee simply because it attaches negative consequences to petition support decisions made prior to the determination of eligibility for distributions.  We decline to construe the claims in this way because, according to such a construction, the CDSOA would not be "retroactive" as the term has been recognized in case law and would be indistinguishable from any of innumerable statutes attaching a consequence to a past action of a person to whom enactment of the statute provided notice of the consequences.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.").  Were we to adopt the alternate construction of plaintiff's retroactivity claims that we pose hypothetically, we would be compelled to dismiss such claims as ones upon which no relief could be granted.

### C.  Plaintiff Does Not Qualify for an Injunction

Plaintiff's January 11, 2012 motion seeks what plaintiff terms a "preliminary injunction,"

under which defendants would be enjoined from disbursing any funds "that are currently being

withheld by CBP for Standard for FY2006-FY2010 . . . for the pendency of this litigation,

including all relevant appeals and remands, until such time as a final court decision is rendered in

this case." Pl.'s Mot. for Prelim. Inj. 1.  A preliminary injunction normally dissolves upon the

entry of judgment. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (stating that the

purpose of a preliminary injunction is to preserve the status quo until the merits of the action are

ultimately determined); 11A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal

Practice and Procedure, § 2947 (2d ed. 2010) (the principal purpose of preliminary injunctive

relief is to preserve the court's power to render a meaningful decision pursuant to a trial on the

merits).  Because our decision today will conclude this action, the question of a preliminary

injunction to prevent irreparable harm during the pendency of this case is moot.

By attempting to enjoin distribution through all remands and appeals, plaintiff's

January 11, 2012 motion seeks equitable relief beyond a preliminary injunction.  Additionally,

plaintiff seeks as a remedy that the court order the ITC to declare Standard an ADP and order

Customs to "disburse pursuant to the CDSOA a pro rata portion of the assessed antidumping

duties on wooden bedroom furniture from China . . . ." First Amended Compl. ¶ 51 (Prayer for

Relief).  In summary, Standard seeks to prevent Customs from paying to other CDSOA claimants

what Standard claims is its share of the withheld distributions and seeks affirmative injunctions

against both agencies so that Standard will receive those distributions.  In these respects, plaintiff

is seeking permanent equitable relief both as a provisional measure pending a possible appeal

and as a remedy on its claims.  We conclude, however, that Standard does not qualify for

permanent equitable relief.

Standard is required to show for a permanent injunction that it has suffered an irreparable

injury, that the remedies available at law are inadequate to compensate for that injury, that,

considering the balance of hardships between the parties, a remedy in equity is warranted, and

that the public interest would not be disserved by a permanent injunction.  *Ebay Inc. v.*

*Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Here, we conclude that there are no "remedies

available at law" and that no "remedy in equity is warranted," based on our analysis of plaintiff's

claims as discussed *supra*.  We presume, without deciding, that plaintiff would be irreparably

harmed were Customs to distribute to other parties what Standard claims to be its share of the

withheld distributions.  With respect to the balance of hardships, Standard would be prejudiced

by such a distribution, but defendant-intervenors also will be prejudiced by further delay in

obtaining what they claim to be their lawful CDSOA disbursements.  The public interest favors

an orderly and lawful distribution of the withheld funds.  The controlling factor, however, is that

neither a remedy at law nor a remedy in equity is appropriate in these circumstances.  For the

reasons discussed in this opinion, we conclude that the appropriate disposition is the dismissal of

this action.

### III.  CONCLUSION

Because Counts 1, 2, 3, and 5 of plaintiff's amended complaints fail to state a claim upon

which relief may be granted, and because the claims in Count 4 of plaintiff's amended

complaints must be dismissed for lack of standing, we will grant the motions to dismiss filed by

defendants and defendant-intervenors.  And because neither a remedy at law nor a remedy in

equity is available on the claims stated, we conclude that plaintiff is not entitled to injunctive

relief that would delay the pending CBP distribution of CDSOA funds or to an affirmative

injunction directing distribution of CDSOA benefits to Standard.  Plaintiff has taken the

opportunity to amend its original complaints and has not indicated an intention to seek leave to

amend its complaints again, and we see no reason why this action should be prolonged.

Accordingly, we shall enter judgment dismissing this consolidated action.


                /s/ Timothy C. Stanceu

                Timothy C. Stanceu

                Judge


Dated: February 17, 2012

      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **STANDARD FURNITURE MANUFACTURING CO., INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendants,<br><br>and<br><br>**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC.**<br><br>Defendant-Intervenors. | **Before:  Gregory W. Carman, Judge**<br>**Timothy C. Stanceu, Judge**<br>**Leo M. Gordon, Judge**<br><br>**Consol. Court No. 07-00028** |

## JUDGMENT

Upon consideration of the amended complaints, the motion to dismiss for failure to state a claim upon which relief can be granted and for judgment on the pleadings filed by the defendant-intervenors, which the court reviews as a motion to dismiss, the motions to dismiss by defendants U.S. International Trade Commission and U.S. Customs and Border Protection, plaintiff's motion for a preliminary injunction, defendants and defendant-intervenors' motions for extension of time to respond to the preliminary injunction, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction, which the court analyzes as a request for permanent equitable relief, be, and hereby is, DENIED; it is further

**ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, GRANTED; it is further

**ORDERED** that plaintiff's statutory claims, First Amendment claims, and Fifth Amendment equal protection claims be, and hereby are, DISMISSED for failure to state a claim upon which relief can be granted; it is further

**ORDERED** that plaintiff's Fifth Amendment due process retroactivity claims be, and hereby are, DISMISSED for lack of standing; it is further

**ORDERED** that defendants and defendant-intervenors' motions for extension of time to respond to plaintiff's motion for preliminary injunction be, and hereby are, DENIED as moot; and it is further

**ORDERED** that this consolidated action be, and hereby is, DISMISSED.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: February 17, 2012
New York, New York